ADAMS, Justice.
This appeal is from the Geneva County Circuit Court’s order ratifying a petition for final settlement and discharge of executors offered by the appellees, Paul Wills and Ernestine Pridgen, as co-executors of the estate of Ruth Hendrix. Appellants, Monroe Wills and Grace Wills Brannon, are two of the beneficiaries under the will, and they contend that the proposed accounting contained questionable disbursements and was not a full, fair, and equitable partition of the lands and estate.
The facts of this case are as follows:
Appellees, Ernestine Pridgen and Paul Wills, were named as co-executors in the last will and testament of the deceased, Ruth Hendrix, and were so appointed by the Probate Court of Geneva County, Alabama, on May 10, 1982. On March 8, 1983, the administration of the estate was removed to the Circuit Court of Geneva County.
By letter dated July 1, 1983, the appel-lees/co-executors filed a proposed accounting and settlement with all of the beneficiaries named in the will. Two of the beneficiaries, Monroe Wills and Grace Wills Bran-non (appellants), rejected the proposal, by *1279 written notice, because they did not consider it to be a fair and equitable partition of the lands, and also because they questioned several of the disbursements. More particularly, appellants averred the following:
1. That the executrix, Ernestine Prid-gen, took money from the estate for her own personal use and did not repay the estate in full;
2. That the executrix, Ernestine Prid-gen, owes the estate for phone calls made by Pridgen Carpets, Inc. and charged against the estate which were made prior to the decedent’s death and were therefore unrelated to estate matters;
3. That the payments to Ernestine Pridgen’s sister, Cornelia Brooks, for filing claims concerning medical expenses incurred by the decedent prior to her death, were unreasonable and were not shown to have benefited the estate;
4. That the liming, ditching, and draining of some of the land only benefited certain beneficiaries and thus was unfair;
5. That the estate was due money from the remainder of a homeowner’s insurance policy premiums;
6. That the division of land proposed was unfair and inequitable;
7. That an air conditioner and a space heater found in a store should have gone to the residuary beneficiaries and not to Mary Ann Bixby;
8. That Item Two E. of the last will and testament of the deceased was incorrectly interpreted by the appellees/co-ex-ecutors.
Following a hearing on the matter, the circuit court, on November 4, 1983, entered an order approving the petition for final settlement and discharge of executors, the pertinent part of which follows:
ORDER
This cause coming on to be heard on the Petition for Final Settlement and Discharge of Executors, and the Court having heard the testimony of the parties and received other evidence is of the opinion that the Petition for Final Settlement should be granted. It is therefore
ORDERED, ADJUDGED and DECREED by the Court as follows:
That the Petition for Final Settlement and Discharge of Executors heretofore filed in this Court under oath has been satisfactorily proven to be a true and accurate accounting of the handling of this estate by the said executors and the same is hereby ratified and approved....
Appellants filed a motion for rehearing, which restated many of the assertions set out above. The motion was denied by the trial court and this appeal followed, wherein appellants reiterated their position that the trial court erred in ratifying the petition for final settlement exactly as it was submitted by the appellees.
It is the policy of this Court to presume correct the findings of the trial court based upon competent evidence, when the evidence is presented ore ten-us. Such findings will not be disturbed on appeal if supported by the evidence or any reasonable inference therefrom, unless they are plainly and palpably erroneous and manifestly unjust. [Citations omitted.] The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.
First Alabama Bank of Montgomery, N.A. v. Coker, 408 So.2d 510, 512 (Ala.1982).
In our consideration of the alleged improprieties raised by the appellants, we find that there is conflicting evidence as to the allegations herein numbered 1, 4, 6, and 8. Applying the aforementioned standard of review, we are unable to find that the trial court’s decision regarding these specific assertions was clearly and palpably erroneous. Therefore, the judgment as it pertains to allegations 1, 4, 6, and 8 is due to be affirmed. However, as to allegations 2, 3, 5, and 7, we determine that the trial court’s findings do not fall within permissi *1280 ble bounds, and reverse its judgment on these points.
With regard to the appellants’ second assertion, the evidence is clear that the trial court erred in allowing an expenditure of $92.23 for phone calls the appellees claim were made by the deceased, Ruth Hendrix. The telephone bill was actually incurred by Pridgen Carpets, Inc. and not the deceased. We have long followed the rule that the will speaks as of the date of the testator’s death, and is construed as operating according to then existing conditions unless a contrary intent is shown. Jeffries v. Boyd, 269 Ala. 177, 112 So.2d 210 (1959). Therefore, since the telephone calls were made prior to the death of the deceased, they cannot be related to estate business. Thus, the expenditure of $92.23 to pay for these calls was unauthorized, and the estate should be reimbursed this money.
Relating to the appellants’ third contention, we find that the trial court was clearly wrong in affirming the $1,360.87 expenditure. The payment of this sum by the executrix to her sister, Cornelia Brooks, for services the executrix herself could have and should have performed was a violation of her duty to settle the estate matters wisely. There was no showing by the appellees that Cornelia Brooks possessed any particular expertise in handling these matters, or that any was even necessary. Due to the failure of the appellees to justify the expenditure, the $1,360.87 must be repaid to the estate.
We also agree with the appellants’ fifth contention that the estate must be reimbursed for the remainder of the homeowner's insurance policy premium. There was uncontroverted testimony at trial that Mary Ann Bixby took possession of the house with approximately six months remaining on a twelve-month homeowner’s policy. The annual premium was $514.00; therefore, the estate is due to be paid $257.00 by Mary Ann Bixby.
Finally, the appellants claim that the trial court was incorrect in allowing a win-
dow air conditioner and a space heater to be distributed to Mary Ann Bixby (as owner of the house) and not to the residuary beneficiaries. We agree. As we have previously stated, a will speaks as of the date of death of the testator. Jeffries v. Boyd, supra. According to the record, all the witnesses who testified about the location of the air conditioner and space heater said the items were in a store on real property in the residuary estate when Ruth Hendrix died. With the exception of the air conditioner and space heater, all of the property in the store was distributed to the residuary beneficiaries. There was no evidence adduced at trial that even suggested an intent on the part of the deceased to have the items distributed to Mary Ann Bixby. Therefore, the air conditioner and space heater should have been distributed to the residuary beneficiaries.
For all of the above-stated reasons, the judgment of the trial court ratifying the petition for final settlement exactly as it was submitted is reversed and the cause remanded for the court to issue an order consistent with this opinion.
REVERSED AND REMANDED.
TORBERT, C.J., and FAULKNER, AL-MON and EMBRY, JJ., concur.